**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**
------------------------------------------------------------------------ X

GANESH MALDONADO ROSENBERG,                    :
                                               :
                         Plaintiff,            :      Civil Action No.:
                                               :      1:19-cv-00414-JJM-LDA
            v.                                 :
                                               :      **AMENDED COMPLAINT**
RTC INDUSTRIES, INC and MARK JERRAM,           :
                                               :      <u>**Jury Trial Demanded**</u>
                         Defendants.           :
------------------------------------------------------------------------ X

Plaintiff Ganesh Maldonado Rosenberg hereby alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      RTC is one of the leading companies in the world with respect to designing, manufacturing and installing product displays and theft deterrence systems for its global client base.  RTC counts among its clients some of the largest companies in the world, including Amazon, Nike, Adidas, CVS, Best Buy, British Petroleum, Coca-Cola, Pepsi, Family Dollar, Kraft, Heinz, Kroger, Michaels, Proctor & Gamble, Sephora, Walmart, Whole Foods, Walgreens and Siemens, to name just a few.

2.      RTC also touts its purported "ongoing initiative to expand [its] employment of the disabled, minority groups, isolated women and single young mothers, economically disadvantaged, long-term unemployed, war veterans and seniors."

3.      Unfortunately, this purported commitment to employing and supporting, *inter alia*, women and mothers, is nothing more than an effort to cultivate a public image that is completely inconsistent with the reality at RTC.

4.      Indeed, Ms. Rosenberg was repeatedly verbally and physically sexually harassed by her second level supervisor, Mr. Jerram, a Senior Vice President of the Company and a member of RTC's leadership team.

5.      By way of example only, Mr. Jerram:

- Remarked that his two marriages have given him only four daughters and no sons, after which he said "if I have one more girl I'm going to commit suicide" and "shouldn't a guy like me, **with a big cock**, get a son."

- Prior to the start of one meeting, walked over from behind his desk to Ms. Rosenberg.  He came uncomfortably close, leered at Ms. Rosenberg, eyeing her up and down multiple times, and said **"you must be working out, you look really hot."**

- On that occasion, Mr. Jerram continued, "What are your dinner plans for the rest of the nights that you are in town? **You need to grab drinks with me, so we can have some fun."**

- On one occasion approached Ms. Rosenberg from behind, **thrust his pubic area into Ms. Rosenberg's behind and reached around to grab and cup her breast.**

6.      Ms. Rosenberg also learned that Mr. Jerram was having a *quid pro quo* sexual relationship with another one of her female colleagues.

7.      In addition to (and along with) the sexual harassment to which Ms. Rosenberg was subjected, Mr. Jerram also made it clear that he would not tolerate her decision to have a second child.  Indeed, shortly after learning that Ms. Rosenberg was pregnant, Mr. Jerram told her, "**don't get me wrong, kids are great, but you just started here and should know that taking your full maternity leave will slow your sales numbers and that's not good for you. <u>You and I need to get a lot closer to make this job work for you.</u>**"

8.      Thus, Mr. Jerram not only warned Ms. Rosenberg that her job would be in jeopardy if she took a full maternity leave, but simultaneously suggested that the only way Ms. Rosenberg could secure a future at RTC would be to have sex with Mr. Jerram.  Ms. Rosenberg once again (as she always did) rebuffed Mr. Jerram.

9.      Shortly after returning from maternity leave, on February 22, 2019, Ms. Rosenberg learned that her father's cancer (which had been in remission) had tragically come back in a very aggressive form.  As a result, she took a leave from February 26, 2019 to April 29, 2019 in order to help take care of her father.

10.     **On April 30, 2019, the day she returned from leave and only two months following her maternity leave, Ms. Rosenberg was fired by Mr. Jerram**.

11.     There is no possible non-discriminatory or non-retaliatory justification for Ms. Rosenberg's termination, and no credible explanation was given.  Ms. Rosenberg had the second highest sales of any employee in the Client Business Development ("CBD") group (and had the highest sales numbers for new business in the entire Create group), had been given a rating of "strong performer" in her January 2019 performance review and was the only member of CBD who signed an account that grossed over $1,000,000 for RTC in the first six months of the relationship.  It is clear that Ms. Rosenberg was terminated because she turned down Mr. Jerram's sexual advances, got pregnant and went out on leave, and had to take care of her ailing father.

12.     Unfortunately, the discrimination and sexual harassment to which Ms. Rosenberg was subjected to is unsurprising given the complete lack of women in RTC's leadership.  In fact, there is only one woman on RTC's Leadership Team, and she is a member of Human Resources. Unfortunately, it is all too common for companies to have one woman or minority member of a

leadership team, and for that person to be a Human Resources professional who is likely paid far less than the men in leadership.  She also holds a "Vice President" title, rather than a c-suite title or the title of "Senior Vice President," as are held by her male peers.

13.     RTC's leadership team looks like this:



14.     It is thus no wonder that Mr. Jerram was permitted to sexually harass and discriminate against Ms. Rosenberg, and ultimately fire her for her refusal to sleep with him, her pregnancy and her need to take protected leaves.

## NATURE OF THE CLAIMS

15.     Plaintiff seeks declaratory, injunctive and equitable relief, as well as monetary damages, to redress RTC's unlawful employment practices in violation of the Rhode Island Civil Rights Act, R.I. Gen. Laws §§ 42-112-1 et. seq., and Mr. Jerram's unlawful battery committed against Plaintiff.  In addition, on June 24, 2019, Ms. Rosenberg filed a Charge of Discrimination

with the Rhode Island Commission for Human Rights (the "Charge").  The Charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue on October 28, 2019.  The Charge alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et. seq. ("Title VII"), Title VII as amended by the Pregnancy Discrimination Act ("PDA"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et. seq. ("ADA") and the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws §§ 28-5 et. seq. ("FEPA").  Ms. Rosenberg has asserted her Title VII, PDA, ADA and FEPA claims within 90 days of receipt of the Notice of Right to Sue.

## JURISDICTION AND VENUE

16.     The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as RTC is a Delaware corporation headquartered in Illinois, Mr. Jerram is a resident of the United Kingdom, Ms. Rosenberg is a resident of the State of Rhode Island and the amount in controversy exceeds $75,000.

17.     Venue is proper in this County pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the employment practices alleged herein, occurred in this district.

## PARTIES

18.     Plaintiff Ganesh Maldonado Rosenberg is a former employee of RTC who, at all relevant times, worked from her office in Providence, Rhode Island.  Ms. Rosenberg is a resident of the State of Rhode Island and, at all relevant times herein, met the definition of an "employee" under all relevant statutes throughout her employment with Defendant.

19.     Defendant RTC Industries, Inc. is a Delaware corporation headquartered in Illinois.  At all times relevant herein, RTC was Plaintiff's "employer" under all relevant statutes.

20.     Defendant Mark Jerram was, at all relevant times, a Senior Vice President of RTC.

## FACTUAL ALLEGATIONS

### I.     MS. ROSENBERG IS HIRED BY RTC AND EXCELS

21.     Ms. Rosenberg, who has 10 years of industry experience, was heavily recruited by RTC throughout the second half of 2017.

22.     On November 10, 2018, RTC offered Ms. Rosenberg a position as a Senior Manager of Client Business Development.

23.     At the time, Ms. Rosenberg also was being recruited by various other companies and had competing offers, but ultimately accepted RTC's offer because of what she was promised in terms of long-term career prospects, salary, bonus and upward mobility, as well as the opportunity to work on strategic client acquisitions.

24.     Ms. Rosenberg was hired into a newly formed CBD group.  The CBD group is within the sales division and members of the CBD group are tasked with attempting to generate business relationships with new clients.  The CBD group was created to help relieve Account Directors and Account Managers from having to focus on building new client relationships while at the same time overseeing existing multi-million-dollar client relationships.

25.     The sales division is led by Mr. Jerram, who holds the position of Senior Vice President, Create.

26.     Ms. Rosenberg reported to Bruce Vierck, who, at the time, held the position of Vice President.  Mr. Vierck, in turn, reported to Mr. Jerram.

27.     It would be a great understatement to say that Ms. Rosenberg excelled in her role at RTC.  Of note, Ms. Rosenberg worked tirelessly to generate a relationship with Uppababy.  As

a result of her hard work and relentless pursuit of this business, RTC was able to secure a deal with Uppababy that has already paid out nearly $2,000,000 to the Company and is likely to be worth somewhere between $5,000,000 and $7,000,000 over the next three to five years.

28.     RTC's Chief Executive Officer, Richard Nathan, personally congratulated Ms. Rosenberg on her success with Uppababy.

29.     Ms. Rosenberg ended 2018 with the second highest sales in the entire CBD group (and had the highest sales numbers for new business in the entire Create group) and was rated as a "strong performer" in her January 2019 performance review.

30.     Ms. Rosenberg was also the only member of CBD that signed an account that did over $1,000,000 in business in the first six months of the relationship.

31.     Unfortunately, but even more impressive, is the fact that Ms. Rosenberg was able to achieve this success while being forced to work in a sexually hostile and discriminatory environment.

## II.     <u>MS. ROSENBERG IS SEXUALLY HARASSED BY MR. JERRAM</u>

32.     Throughout Ms. Rosenberg's employment she was regularly sexually harassed by Mr. Jerram.

33.     By way of example, during the very first week of Ms. Rosenberg's employment she had a lunch with Mr. Jerram and Mr. Vierck.

34.     During this lunch, Mr. Jerram told Ms. Rosenberg about how he had been married twice (he remains married to his second wife) and that out of those marriages he had only four daughters (and no sons).

35.     He followed this up by saying, "**I've given up trying for a boy because if I have one more girl I'm going to commit suicide.**"

36.     Obviously, this sexist comment was very offensive, but Mr. Jerram was not done. Rather, he continued on, looking directly at Ms. Rosenberg, and said "**shouldn't a guy like me, with a big cock, get a son.**"

37.     Both Ms. Rosenberg and Mr. Vierck were extremely uncomfortable and Mr. Vierck quickly changed the subject of conversation.

38.     Over the following two months, Ms. Rosenberg spent three days per week onboarding and training in RTC's offices in Rolling Meadows, Illinois.

39.     During these visits to Rolling Meadows, Ms. Rosenberg had many meetings with Mr. Jerram during which he subjected her to sexual harassment.

40.     For instance, prior to the start of one meeting, Mr. Jerram walked over from behind his desk to Ms. Rosenberg.  **He came uncomfortably close, leered at Ms. Rosenberg, eyeing her up and down multiple times, and said "you must be working out, you look really hot."**  When Ms. Rosenberg did not immediately respond, Mr. Jerram, as was his practice when sexually harassing Ms. Rosenberg, continued and said: "**What are your dinner plans for the rest of the nights that you are in town?  You need to grab drinks with me, so we can have some fun.**"  Ms. Rosenberg declined this explicit sexual advance.

41.     In late-June 2018, Ms. Rosenberg was sexually assaulted by Mr. Jerram.  While Ms. Rosenberg was at the printer in front of Mr. Jerram's office, **Mr. Jerram approached from behind and thrust his pubic area into Ms. Rosenberg's behind and, while breathing down her neck, reached around Ms. Rosenberg's body with his arms and cupped her breast with his hands.  While doing this, Mr. Jerram whispered into Ms. Rosenberg's ear, "I didn't know you were in town this week, are you already all booked up for dinner? I have to see you."**  Ms. Rosenberg, terrified, said "don't ever touch me," and fled from Mr. Jerram.

42.    Further illustrative of the sexually hostile work environment at RTC, the only other female member of the CBD team, Holly Draher, confessed to Ms. Rosenberg that she was engaged in a sexual relationship with Mr. Jerram.

43.    Specifically, Ms. Draher said that during various business trips she and Mr. Jerram had "hooked up," and that Mr. Jerram had told her to "just keep doing what she was doing" and he would ensure that Ms. Draher would report to him and not Mr. Vierck (who Ms. Draher did not like).

44.    This, of course, is a blatant example of *quid pro quo* sexual harassment.

45.    Unfortunately, the discrimination and sexual harassment to which Ms. Rosenberg was subjected is unsurprising given the complete lack of women in RTC's leadership.  In fact, there is only one woman on RTC's Leadership Team, and she is a member of Human Resources. Unfortunately, it is all too common for companies to have one woman or minority member of a leadership team, and for that person to be a Human Resources professional who is likely paid far less than the men in leadership.  She also holds a "Vice President" title, rather than a c-suite title or the title of "Senior Vice President," as are held by her male peers.

## III.    MS. ROSENBERG IS SUBJECTED TO PREGNANCY AND ASSOCIATIONAL DISABILITY DISCRIMINATION, AND IS THEN FIRED

46.    In or around the end of May 2018, Ms. Rosenberg informed Mr. Jerram that she was pregnant with her second child.  Not long thereafter, Mr. Jerram issued a warning to Ms. Rosenberg, while at the same time sexually harassing her.  Specifically, he told Ms. Rosenberg **"don't get me wrong, kids are great, but you just started here and should know that taking your full maternity leave will slow your sales numbers and that's not good for you.  You and I need to get a lot closer to make this job work for you."**

47.     Thus, Mr. Jerram not only warned Ms. Rosenberg that her job would be in jeopardy if she took a full maternity leave, but simultaneously suggested that the only way Ms. Rosenberg could secure a future at RTC would be to have sex with Mr. Jerram.

48.     Wary of Mr. Jerram's thinly veiled threats, Ms. Rosenberg worked up until she went into labor on October 19, 2018.  Ms. Rosenberg took maternity leave from October 19, 2018 to January 21, 2019.  As a demonstration of her commitment to the Company, during the last four weeks of her maternity leave, Ms. Rosenberg worked every Friday morning without pay to ensure that the work for which she was responsible was being done correctly.

49.     Shortly after returning from maternity leave, on February 22, 2019, Ms. Rosenberg learned that her father's cancer (which had been in remission) had tragically come back in a very aggressive form.  As a result, she took a leave from February 26, 2019 to April 29, 2019 in order to help take care of her father.

50.     **On April 30, 2019, the day she returned from leave, Ms. Rosenberg was fired by Mr. Jerram**.

51.     There is no possible non-discriminatory or non-retaliatory justification for Ms. Rosenberg's termination, and no credible explanation was given.  The only explanation, purported cost-cutting, is completely undermined by the fact that RTC posted an advertisement for a sales role in the days following Ms. Rosenberg's termination.

52.     As noted above, Ms. Rosenberg had the second highest sales of any employee in the CBD group (and had the highest sales numbers for new business in the entire Create group), had been given a rating of "strong performer" in her January 2019 performance review and was the only member of CBD that signed an account that grossed over $1,000,000 in sales in the first six months of the relationship.  It is clear that Ms. Rosenberg was terminated because she turned

down Mr. Jerram's sexual advances, got pregnant and went out on leave, and had to take care of her ailing father.

53.     All of Ms. Rosenberg's colleagues and superiors were shocked at her termination and went out of their way to express that sentiment.  One highly respected Vice President, Adam Gold, stated, "**we have lost the only superstar sales person we have.**"

54.     Ms. Rosenberg's termination has turned her life upside down.  She suffers from crippling anxiety and depression and is seeking treatment from several mental health professionals.  Her sleep, eating, interpersonal relationships and care giving have been and continue to be severely adversely impacted as a result of her abrupt termination and the verbal and physical sexual harassment to which she was subjected.

55.     In addition, Ms. Rosenberg's professional career, which she spent nearly two decades carefully building, has been derailed.

**FIRST CAUSE OF ACTION**
**(Gender Discrimination in Violation of Title VII: Against RTC)**

56.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

57.     By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender in violation of Title VII by subjecting her to disparate treatment based upon her gender, including, but not limited to, subjecting Plaintiff to sexual harassment and a hostile work environment.

58.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

59.      As a direct and proximate result, Plaintiff has suffered, and continues to suffer,

severe physical injury, pain, ailments and conditions, as well as mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and other emotional pain and suffering, for which she is entitled to an award of compensatory damages and other relief.

60.     RTC's unlawful discriminatory actions constitute malicious, willful and wanton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII: Against RTC)

61.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

62.     By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her complaints of discrimination by terminating her employment.

63.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

64.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe physical injury, pain, ailments and conditions, as well as mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and other emotional pain and suffering, for which she is entitled to an award of compensatory damages and other relief.

65.     RTC's unlawful discriminatory actions constitute malicious, willful and wanton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

**THIRD CAUSE OF ACTION**
**(Discrimination in Violation of ADA: Against RTC)**

66.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

67.     Defendant RTC discriminated against Plaintiff on the basis of her known relationship or association with a person with a known disability and/or perceived disability in violation of ADA by, *inter alia*, denying her the equal terms and conditions of employment and unlawfully terminating her employment because of her father's disability.

68.     As a direct and proximate result of Defendant RTC's unlawful discriminatory conduct in violation of ADA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages.

69.     As a direct and proximate result of Defendant RTC's unlawful discriminatory conduct in violation of ADA, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

70.     Defendant RTC's unlawful and discriminatory actions constitute malicious, willful and wanton violations of ADA, for which Plaintiff is entitled to an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**(Discrimination in Violation of the PDA: Against RTC)**

71.     Claimant hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

72.     By the actions described above, among others, Defendant RTC discriminated against Plaintiff on the basis of her pregnancy in violation of the PDA by denying Claimant the same terms and conditions of employment available to others based on her pregnancy, including

but not limiting to, subjecting Plaintiff to sexual harassment, a hostile work environment and the termination of her employment.

73.     As a direct and proximate result of Defendant RTC's unlawful and discriminatory conduct in violation of the PDA, Claimant has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

74.     RTC's unlawful discriminatory actions constitute malicious, willful and wanton violations of PDA for which Plaintiff is entitled to an award of punitive damages.

## **FIFTH CAUSE OF ACTION**
### **(Retaliation in Violation of the PDA: Against RTC)**

75.     Claimant hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

76.     By the actions described above, among others, Defendant RTC retaliated against Plaintiff on the basis of her pregnancy in violation of the PDA by denying Plaintiff the same terms and conditions of employment available to others based on her complaints of pregnancy discrimination, including but not limiting to, the termination of her employment.

77.     As a direct and proximate result of Defendant RTC's unlawful and retaliatory conduct in violation of the PDA, Claimant has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

78.     RTC's unlawful discriminatory actions constitute malicious, willful and wanton violations of PDA for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
**(Discrimination in Violation of the FEPA: Against RTC)**

79.    Claimant hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

80.    By the actions described above, among others, Defendant RTC discriminated against Plaintiff on the basis of her gender and/or pregnancy in violation of the FEPA by denying Claimant the same terms and conditions of employment available to others based on her gender and/or pregnancy, including but not limiting to, subjecting Plaintiff to sexual harassment, a hostile work environment and the termination of her employment.

81.    Defendant RTC employs four (4) or more individuals.

82.    As a direct and proximate result of Defendant RTC's unlawful and discriminatory conduct in violation of the FEPA, Claimant has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

83.    RTC's unlawful discriminatory actions constitute malicious, willful and wanton violations of FEPA for which Plaintiff is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
**(Retaliation in Violation of the FEPA: Against RTC)**

84.    Claimant hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

85.    By the actions described above, among others, Defendant RTC retaliated against Plaintiff on the basis of her gender and/or pregnancy in violation of the FEPA by denying Plaintiff the same terms and conditions of employment available to others based on her

complaints of pregnancy discrimination, including but not limiting to, the termination of her employment.

86.     Defendant RTC employs four (4) or more individuals.

87.     As a direct and proximate result of Defendant RTC's unlawful and retaliatory conduct in violation of the FEPA, Claimant has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

88.     RTC's unlawful discriminatory actions constitute malicious, willful and wanton violations of FEPA for which Plaintiff is entitled to an award of punitive damages.

## EIGHTH CAUSE OF ACTION
### (Discrimination on the Basis of Sex – Hostile Work Environment – in Violation of the Rhode Island Civil Rights Act: Against RTC)

89.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

90.     RTC has discriminated against Plaintiff on the basis of her gender in violation of the Rhode Island Civil Rights Act ("RICRA") by, *inter alia*, subjecting Plaintiff to sexual harassment and a hostile work environment.

91.     RTC allowed Plaintiff's supervisor, Mr. Jerram, to subject Plaintiff to sexual harassment that was unwelcome, hostile, abusive, severe, pervasive, continuous, and open and notorious that unreasonably  interfered with Plaintiff's work performance, depriving Plaintiff of the right to work in an environment free from sexual harassment in violation of R.I. Gen. Laws §§ 42-112-1 et. seq., and as a direct and proximate result of RTC's unlawful discriminatory conduct in violation of the RICRA, Plaintiff has suffered, and continues to suffer, severe mental anguish

and emotional distress for which she is entitled to an award of monetary damages and other relief.

92.     RTC's unlawful discriminatory actions constitute malicious, willful and wanton violations of the RICRA for which Plaintiff is entitled to an award of punitive damages.

## NINTH CAUSE OF ACTION
**(Discrimination on the Basis of Sex – *Quid Pro Quo* Sexual Harassment – in Violation of the Rhode Island Civil Rights Act: Against RTC)**

93.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

94.     Defendants unlawfully subjected Plaintiff to discriminatory on-the-job harassment and discriminatory working conditions because Plaintiff rejected Mr. Jerram's uninvited, offensive, and unwelcome sexual advances in violation of R.I. Gen. Laws § 42-112-1 et. seq. and as a direct and proximate result of RTC's unlawful discriminatory conduct in violation of the RICRA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

95.     As a direct and proximate result of RTC's unlawful discriminatory conduct in violation of the RICRA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

96.     RTC's unlawful discriminatory actions constitute malicious, willful and wanton violations of the RICRA for which Plaintiff is entitled to an award of punitive damages.

**TENTH CAUSE OF ACTION**
**(Discrimination on the Basis of Sex – Unlawful Discriminatory Termination – in Violation of the Rhode Island Civil Rights Act: Against RTC)**

97.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

98.     RTC has discriminated against Plaintiff on the basis of her gender in violation of RICRA by, *inter alia*, terminating Plaintiff because of her sex and refusal to submit to Mr. Jerram's sexual advances.

99.     As a direct and proximate result of RTC's unlawful discriminatory conduct in violation of the RICRA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

100.    As a direct and proximate result of RTC's unlawful discriminatory conduct in violation of the RICRA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

101.    RTC's unlawful discriminatory actions constitute malicious, willful and wanton violations of the RICRA for which Plaintiff is entitled to an award of punitive damages.

**ELEVENTH CAUSE OF ACTION**
**(Discrimination on the Basis of Pregnancy in Violation of the Rhode Island Civil Rights Act: Against RTC)**

102.    Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

103.    RTC has discriminated against Plaintiff on the basis of her pregnancy in violation of RICRA by, *inter alia*, subjecting Plaintiff to disparate treatment and termination because of her pregnancy and need to take pregnancy-related leave.

18

104.    As a direct and proximate result of RTC's unlawful discriminatory conduct in violation of the RICRA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

105.    As a direct and proximate result of RTC's unlawful discriminatory conduct in violation of the RICRA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

106.    RTC's unlawful discriminatory actions constitute malicious, willful and wanton violations of the RICRA for which Plaintiff is entitled to an award of punitive damages.

### TWELFTH CAUSE OF ACTION
**(Discrimination on the Basis of Associational Disability
in Violation of the Rhode Island Civil Rights Act: Against RTC)**

107.    Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

108.    RTC has discriminated against Plaintiff on the basis of her association with an individual with a disability by in violation of RICRA by, *inter alia*, subjecting Plaintiff to disparate treatment and termination because of her association with an individual with a disability and need to take leave related to her association with an individual with a disability.

109.    As a direct and proximate result of RTC's unlawful discriminatory conduct in violation of the RICRA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

110.    As a direct and proximate result of RTC's unlawful discriminatory conduct in violation of the RICRA, Plaintiff has suffered, and continues to suffer, severe mental anguish

and emotional distress for which she is entitled to an award of monetary damages and other relief.

111.    RTC's unlawful discriminatory actions constitute malicious, willful and wanton violations of the RICRA for which Plaintiff is entitled to an award of punitive damages.

**THIRTEENTH CAUSE OF ACTION**
**(Civil Battery: Against Mark Jerram)**

112.    Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

113.    Mr. Jerram committed the intentional tort of battery against Plaintiff by, *inter alia*, touching her in an offensive way without her consent.

114.    As a direct and proximate result of Mr. Jerram's battery, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

115.    Mr. Jerram's battery was malicious, willful and wanton and Plaintiff is entitled to an award of punitive damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A.      A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the State of Rhode Island;

B.      An injunction and order permanently restraining Defendant and its partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with it, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C.      An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, loss of past and future income, wages, compensation, seniority, and other benefits of employment;

D.      An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

E.      An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff, including, but not limited to, loss of income, earned bonus pay, reputational harm and harm to professional reputation, in an amount to be determined at trial, plus prejudgment interest;

F.      An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

G.      Prejudgment interest at the state rate of twelve percent (12%) per annum on all amounts due;

H.      An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and,

I.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated:  January 8, 2020
New York, New York

Respectfully submitted,

**LAW OFFICE OF MARK P. GAGLIARDI**

**WIGDOR LLP**

By:  _____/s/_____

Mark P. Gagliardi
Bar No. 6819

By:  _____

Michael J. Willemin
(admitted *pro hac vice*)
Lindsay M. Goldbrum
(admitted *pro hac vice*)

Wayland Square
201 Wayland Avenue, Suite 8
Providence, Rhode Island 02906
Telephone:  (401) 277-2030
Facsimile:  (401) 277-2021
mark@markgagliardilaw.net

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845
mwillemin@wigdorlaw.com
lgoldbrum@wigdorlaw.com

*Counsel for Plaintiff*

*Counsel for Plaintiff*

## VERIFICATION

STATE OF RHODE ISLAND      )
                                :

COUNTY OF PROVIDENCE      )

      Ganesh Maldonado Rosenberg, being duly sworn, deposes and says that she is the Plaintiff in this matter, that she has read the foregoing Verified Amended Complaint and Jury Demand and that she believes that the facts set forth therein are true and correct to the best of her knowledge.  Ms. Rosenberg's knowledge is based on personal knowledge of the facts of this case, as well as statements made to her by others.

                                                      _____
                                             GANESH MALDONADO ROSENBERG

Sworn to before me this
4th day of ~~November, 2019~~
January 2020

_____
NOTARY PUBLIC