UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

GANESH MALDONADO ROSENBERG :
:
:
v. : C.A. No. 19-00414-MSM
:
RTC INDUSTRIES, INC. and :
MARK JERRAM :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommended disposition (28 U.S.C. § 636(b)(1)(B)) is Defendants' Motion to Dismiss this action for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2) and 12(b)(3), Fed. R. Civ. P., or in the alternative, for an order transferring the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404. (ECF No. 6). Plaintiff opposes the Motion. (ECF No. 8). A hearing was held on January 15, 2020. After reviewing the pleadings and arguments of the parties, I recommend that Defendants' Motion be DENIED in its entirety.

**I.     Background**

The following facts are gleaned from Plaintiff's Amended Complaint and taken as true for purposes of this Motion. Plaintiff Ganesh Maldonado Rosenberg is a former employee of RTC who, at all relevant times, worked from an office in Providence, Rhode Island. Plaintiff is a resident of the State of Rhode Island and, at all relevant times, met the definition of an "employee" under all relevant statutes throughout her employment with Defendant. Defendant

RTC Industries, Inc. is a Delaware corporation headquartered in Illinois. At all times relevant, RTC was Plaintiff's "employer" under all relevant statutes. Defendant Mark Jerram was a Senior Vice President of RTC. Plaintiff asserts twelve state and federal statutory discrimination claims against RTC and one common law battery claim against Mr. Jerram.

Plaintiff was recruited by RTC throughout the second half of 2017. On November 10, 2017, RTC offered Plaintiff a position as a Senior Manager of Client Business Development ("CBD"). Plaintiff was hired into a newly formed CBD group. The CBD group is within the Sales Division. The Sales Division is led by Mr. Jerram, who holds the position of Senior Vice President, Create. Plaintiff reported directly to Bruce Vierck, who, at the time, held the position of Vice President. Mr. Vierck, in turn, reported to Mr. Jerram.

Plaintiff had the second highest sales of any employee in the CBD group (and had the highest sales numbers for new business in the entire Create group), had been given a rating of "strong performer" in her January 2019 performance review and was the only member of CBD who signed on an account that grossed over $1,000,000 for RTC in the first six months of the relationship.

Plaintiff contends that throughout her employment she was regularly sexually harassed by Mr. Jerram. She asserts that during a lunch with Mr. Vierck and Mr. Jerram, Mr. Jerram told Plaintiff "I've given up trying for a boy because if I have one more girl I'm going to commit suicide." He then stated, "shouldn't a guy like me, with a big cock, get a son." Over the following two months, Plaintiff spent three days per week onboarding and training in RTC's offices in Illinois. During these visits, Plaintiff had many meetings with Mr. Jerram during which he allegedly subjected her to sexual harassment. For instance, prior to the start

of one meeting, Mr. Jerram walked over from behind his desk to Plaintiff. He came uncomfortably close, leered at Plaintiff, eyeing her up and down multiple times, and said "you must be working out, you look really hot." When Plaintiff did not immediately respond, Mr. Jerram said: "What are your dinner plans for the rest of the nights that you are in town? You need to grab drinks with me, so we can have some fun." In late-June 2018, Plaintiff alleges she was sexually assaulted by Mr. Jerram. While Plaintiff was at the printer in front of Mr. Jerram's office, Mr. Jerram approached from behind and thrust his pubic area into Plaintiff's behind and, while breathing down her neck, reached around Plaintiff's body with his arms and cupped her breast with his hands. While doing this, Mr. Jerram whispered into Plaintiff's ear, "I didn't know you were in town this week, are you already all booked up for dinner? I have to see you." Plaintiff responded, "don't ever touch me," and fled from Mr. Jerram.

In or around the end of May 2018, Plaintiff informed Mr. Jerram that she was pregnant with her second child. Not long thereafter, Mr. Jerram told Plaintiff "don't get me wrong, kids are great, but you just started here and should know that taking your full maternity leave will slow your sales numbers and that's not good for you. You and I need to get a lot closer to make this job work for you." Plaintiff worked up until she went into labor on October 19, 2018. Plaintiff took maternity leave from October 19, 2018 to January 21, 2019. Shortly after returning from maternity leave, Plaintiff learned that her father's cancer (which had been in remission) had tragically come back in a very aggressive form. As a result, she took a leave from February 26, 2019 to April 29, 2019 in order to help take care of her father. On April 30, 2019, the day she returned from leave, Plaintiff was fired by Mr. Jerram. According to

Plaintiff, the only explanation, purported cost-cutting, is completely undermined by the fact that RTC posted an advertisement for a sales role in the days following her termination.

**II.     Standard of Review**

It is well established that the burden rests with the plaintiff to make a prima facie showing to withstand a challenge to personal jurisdiction.  Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001) (citing Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83-84 (1st Cir. 1997)).  See also, Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002).  In assessing the plaintiff's prima facie case, the Court must accept as true the "plaintiff's (properly documented) evidentiary proffers" and construe them "in the light most congenial to the plaintiff's jurisdictional claim."  See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34, 51 (1st Cir. 1998).  See also Trio Realty, Inc. v. Eldorado Homes, Inc., 350 F. Supp. 2d 322, 325 (D.P.R. 2004) (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)) (the court "draw[s] the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff.").  In setting forth the prima facie case, the plaintiff is required to bring to light credible evidence and "cannot rest upon mere averments, but must adduce competent evidence of specific facts." Barrett, 239 F.3d at 26 (citing Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)).

**III.     Personal Jurisdiction**

The Due Process Clause of the Fourteenth Amendment requires that an out-of-state defendant "have certain minimum contacts with [the forum] such that the maintenance of the

suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The District Court may exercise two types of personal jurisdiction over defendants: general and specific jurisdiction. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009). General jurisdiction broadly subjects the defendant to suit in the forum on all matters, including those unrelated to the defendant's contacts with the forum. BlueTarp Fin., Inc. v. Matrix Constr. Co., 709 F.3d 72, 79 (1st Cir. 2013); Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010). Specific jurisdiction, by contrast, depends on "an affiliatio[n] between the forum and the underlying controversy." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011). For a federal court sitting in diversity to exercise specific jurisdiction, Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33(a), must authorize it. BlueTarp Fin., Inc., 709 F.3d at 79; Astro-Med, Inc., 591 F.3d at 8. The Rhode Island long-arm statute is coextensive with the permissible reach of the Due Process Clause. Id.

The initial inquiry is whether the Court has general or specific jurisdiction. Plaintiff contends that there is both specific and general jurisdiction over Defendants. The Court commences with a consideration of the specific jurisdiction arguments. The Supreme Court has held that where plaintiff's claim "arises out of" or is "directly related to" defendant's contacts with the forum state, a court exercises "specific jurisdiction" over the defendant. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, n.8 (1984).

In the analysis of specific jurisdiction, the court applies two general rules. First, the forum in which the Federal District Court sits must have a long-arm statute that grants jurisdiction over the defendant. See Barrett, 239 F.3d at 26. Second, "the plaintiff must...show

-5-

sufficient minimum contacts such that 'the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution.'" LaVallee v. Parrot-Ice Drink Prod. of Am., Inc., 193 F. Supp. 2d 296, 302 (D. Mass. 2002) (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)). Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, authorizes a court to exercise jurisdiction over non-resident defendants to the fullest extent permitted by the United States Constitution. See Donatelli v. Nat'l Hockey League, 893 F.2d 459, 461 (1st Cir. 1990); see also Morel ex rel. Moorehead v. Estate of Davidson, 148 F. Supp. 2d 161 (D.R.I. 2001). Accordingly, the Court need only decide whether the assertion of personal jurisdiction over Defendants comports with due process principles.

### A. Due Process Considerations

Where specific jurisdiction is asserted, the First Circuit has developed a three-prong test for analyzing the due process considerations for the existence of specific personal jurisdiction: first, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities; second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and third, the exercise of jurisdiction must, in light of the "Gestalt factors," be reasonable. United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). In order for a court to exercise specific personal jurisdiction, all three factors – relatedness, purposefulness and reasonableness – must be satisfied. Since these factors are satisfied, Defendants are subject to

specific personal jurisdiction, and the Court need not consider the presence of general personal jurisdiction.

1. **Relatedness**

The first prong of the due process test is a consideration of relatedness. To meet the relatedness requirement of specific personal jurisdiction, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." United Elec., 960 F.2d at 1089. Relatedness is intended to be a "flexible, relaxed standard." Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995) (citing Pritzker, 42 F.3d at 61). In a contract case, relatedness is established if the defendant's contacts with the forum "were instrumental either in the formation of the contract or in its breach." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999).

This is an employment discrimination claim brought by a Rhode Island resident, working in Rhode Island, against an employer with a Rhode Island business presence and a senior-level sales executive with ultimate managerial authority over Plaintiff and other Rhode Island sales relationships. While Plaintiff alleges that she was the subject of certain sexually offensive comments and behavior from Mr. Jerram while present in RTC's Illinois headquarters, her allegations are not so limited. In addition to her allegations of sexual harassment and battery, Plaintiff also alleges pregnancy and associational disability discrimination and retaliation. Plaintiff contends that her Rhode Island-based employment with RTC was ultimately terminated by Mr. Jerram on April 30, 2019 and that the termination decision was unlawfully motivated by her rejecting Mr. Jerram's sexual advances and her

taking a maternity leave and family medical leave in late 2018/early 2019. Accordingly, Plaintiff has easily satisfied the relatedness prong.

2. **Purposeful Availment**

The second prong of the due process test considers whether a defendant has "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable." Sawtelle, 70 F.3d at 1391 (quoting Rush v. Savchuk, 444 U.S. 320, 329 (1980)). Two factors are considered in the purposeful availment analysis: voluntariness and foreseeability. See Ticketmaster, 26 F.3d at 207. The requirement "depends upon the extent to which the defendants voluntarily took action that made it foreseeable they might be required to defend themselves in court in [the forum state]." PFIP, LLC v. Planet Fitness Enter., Inc., No. CIV.04-250-JD, 2004 WL 2538489, at *7 (D.N.H. Nov. 10, 2004) (citing Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 11 (1st Cir. 2002)). The issue of foreseeability "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). There must be evidence of "a voluntary decision by the defendant to inject [itself] into the local economy as a market participant." Microfibres, Inc. v. McDevitt-Askew, 20 F. Supp. 2d 316, 321 (D.R.I. 1998).

Plaintiff here presents ample evidence that Defendants intentionally sought to conduct business in Rhode Island. Plaintiff was hired to work for RTC (and Mr. Jerram) in Rhode Island. Plaintiff's employment offer letter was addressed to her in Rhode Island, and RTC's website listed "Providence, RI" as one of its "Global Locations" during the relevant period. It

-8-

is also undisputed that RTC had an independent business relationship at the time with a major national retailer headquartered in Rhode Island. Plaintiff asserts that she regularly communicated with RTC employees (including Mr. Jerram) and RTC clients via telephone and email from her Rhode Island office, and was "tasked by Defendants with growing RTC's business" with the aforementioned Rhode Island-based retail client. (ECF No. 9 at p. 3). See Ticketmaster-New York, 26 F.3d at 208 ("when the source takes the initiative and causes foreseeable injury, jurisdiction may lie"). In Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F. Supp. 2d 31, 35-37 (D.R.I. 2003), this Court noted that "[i]n this progressively globalized economic era of Internet and electronic business communication, it is increasingly common for businesses to employ individuals, such as [Defendant], at remote or off-site locations...." Like the defendant in that case, Defendants' conduct was voluntary and intentional, and, given the totality of the facts presented, it was foreseeable that they would be subject to jurisdiction in this District. The Eximias Court noted that, "[c]ourts in this and other circuits have recognized (increasingly so in recent years) that Internet-based contacts, such as e-mail communications, particularly when coupled with other more traditional contacts, offer compelling grounds for the assertion of personal jurisdiction over a non-resident defendant." (citations omitted). Accordingly, Plaintiff has easily satisfied the purposeful availment prong.

### 3. Gestalt Factors

The third prong of the test involves a determination of whether or not the Court's exercise of jurisdiction over Defendant is reasonable. United Elec., 960 F.2d at 1089. In making this determination, the Court considers the so-called Gestalt factors. See, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980). Although the first two prongs

of the analysis have been satisfied, this Court still must consider whether Rhode Island's assertion of jurisdiction is fair and reasonable under these circumstances. "[G]auging fairness requires an assessment of reasonableness for, in certain circumstances, unreasonableness can trump a minimally sufficient showing of relatedness and purposefulness." Ticketmaster-New York, 26 F.3d at 210. "[T]he reasonableness prong of the due process inquiry evokes a sliding scale." Id. That is, "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." Id.

The Gestalt factors include: (1) the defendant's burden of appearing in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. Ticketmaster-New York, 26 F.3d at 209 (citing Burger King, 471 U.S. at 477). While the plaintiff has the burden of showing relatedness and purposeful availment, the defendant has the burden of showing that jurisdiction is unreasonable. Id. at p. 206.

In the present case, "[t]he parties have identified few burdens, interests, or inefficiencies that cut strongly in favor of or against jurisdiction." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 70 (1st Cir. 2014). The first factor to consider is Defendants' burden of appearance in Rhode Island. Defendants rely primarily on the facts that RTC is located in Illinois and that some of the conduct at issue occurred in Illinois. They cite

the burden of travel for RTC employees/witnesses. Since Defendants' Motion was initially briefed, the Court was informed that Mr. Jerram is no longer employed by RTC and has relocated to the United Kingdom. Thus, the burden argument no longer applies to Mr. Jerram as there would appear to be less burden in traveling from the United Kingdom to Rhode Island than from the United Kingdom to Illinois. "[M]ounting an out-of-state defense most always means added trouble and cost," BlueTarp Fin., 709 F.3d at 83, and modern travel "creates no especially ponderous burden for business travelers," Pritzker, 42 F.3d at 64. For the burden to be such that it would affect the personal jurisdiction analysis, Defendants must show that it is "special or unusual." BlueTarp Fin., 709 F.3d at 83 (quoting Hannon v. Beard, 524 F.3d 275, 285 (1st Cir. 2008)) (internal quotation marks omitted). Defendants have failed to show that the burden in this case would be in any way "special or unusual" or outweigh the parallel burden for Plaintiff and her potential witnesses to travel to Illinois. Therefore, Defendants' argument that it would be burdensome to require them to appear in Rhode Island does not weigh in their favor.

The second consideration is the interest of the forum. The Supreme Court has explained, "[a] State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 473 (internal citations omitted). Therefore, the second consideration also weighs in favor of Plaintiff. The third factor to consider is that of Plaintiff's convenience. "Courts regularly cede some deference to the plaintiff's choice of forum." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 41 (1st Cir. 2016). Plaintiff is a Rhode Island resident and worked for RTC in a Rhode Island office. Accordingly, the third consideration

weighs in favor of Plaintiff. Next, this Court considers the fourth factor – the effect on the administration of justice. In the present case, the "interest of the judicial system in the effective administration of justice does not appear to cut in either direction." Ticketmaster-N.Y., 26 F.3d at 211. This factor is "self-evidently a wash." Baskin-Robbins, 825 F.3d at 41 ("Even though Massachusetts courts can effectively administer justice in this dispute, they have no corner on the market.") (internal citations omitted). Finally, the last Gestalt factor is that of pertinent policy arguments. It is true that Illinois "has a legitimate stake in providing its citizens with a convenient forum for adjudicating disputes." Baskin-Robbins, 825 F.3d at 41. However, this factor does not tip the scales that have already been heavily weighed towards this Court's exercise of jurisdiction over Defendants. Overall, an analysis of the Gestalt factors does not show that a finding of personal jurisdiction over the Defendants within Rhode Island "would be so unfair or unreasonable as to raise constitutional concerns." Baskin-Robbins, 825 F.3d at 41. Defendants have not established that it would be unreasonable for this Court to exercise personal jurisdiction over them. Accordingly, the Court finds that it may constitutionally exercise specific personal jurisdiction over Defendants.

**IV.  Venue**

Next, the Court considers Defendants' alternative request that the Court transfer venue to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Under § 1404(a) a district court may transfer any civil action "to any other district where it may have been brought for the convenience of parties and witnesses, in the interest of justice." Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000) (quoting 28 U.S.C. § 1404(a)). For the reasons discussed herein, the Court finds Defendants' arguments unpersuasive.

In Stewart Org., Inc. v. Ricoh Co., the Supreme Court noted that §1404(a) is "intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." 487 U.S. 22, 29 (1988) (citations omitted). Defendants bear the burden of demonstrating that transfer is appropriate, and there is a "strong presumption in favor of the plaintiff's choice of forum." Coady, 223 F.3d at 11. Moreover, as previously noted, Plaintiff points out that "[i]nconvenience to the defendant is not sufficient to grant § 1404(a) relief, where the transfer would merely shift the inconvenience to the other party. 'Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.'" Brian Jackson, 248 F. Supp. 2d at 38 (internal citations omitted). For the same overall reasons supporting the exercise of personal jurisdiction in this District, the Court concludes that Defendants have not made any persuasive argument for discretionary transfer of venue under § 1404(a). Accordingly, Defendants have failed to meet their burden in seeking to establish that the matter should be transferred to the Northern District of Illinois for convenience and fairness. See Astro-Med, 591 F.3d at 8.

**V.     Conclusion**

For the foregoing reasons, I recommend that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer Venue (ECF No. 6) be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United

States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 22, 2020